# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____
)
KENNETH J. TAGGART,                )
)
              Plaintiff,           )
)
v.                                 )        Civil No. 09-1281-MAM
)
NORWEST MORTGAGE, INC., *et al.*,  )
)
              Defendants.          )
_____)

## MEMORANDUM OF LAW OF IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

Defendant, Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. as successor in interest to Wells Fargo Home Mortgage, Inc. ("Wells Fargo") and as successor in interest to Norwest Mortgage, Inc. and on behalf of co-defendant Deutsche Bank National Trust Company, submits this memorandum of law in support of its Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## INTRODUCTION

Plaintiff seeks to rescind his mortgage loan with Wells Fargo but fails to present any theory of recovery that provides for rescission under the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). Plaintiff pleads theories of TILA and Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") disclosure violations as well as violations of the Home Ownership Equity Protection Act ("HOEPA"), together with "piggy-back" claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). He also alleges Wells Fargo breached a fiduciary duty  and violated the Fair Credit Reporting Act, 15

U.S.C. § 1681, *et seq.* ("FCRA"), and the Fair Debt Collections Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA"). His allegations fail to provide evidence to support any of his claims. Indeed, the supporting documents attached hereto and reasonable inferences to be drawn from the matters raised in the Amended Complaint vindicate Wells Fargo from any liability and warrant dismissal of the Amended Complaint in its entirety, as explained more fully below.

## FACTUAL BACKGROUND

Kenneth J. Taggart ("Plaintiff") applied to refinance his mortgage loan on property located at 45 Heron Road, Holland, Pennsylvania (the "Property") on August 24, 2006. Compl. ¶ 7. Community Lending acted as broker and Decision One Mortgage, Inc. funded the loan. Compl. ¶ 9. The mortgage loan closed on September 15, 2006 ("the Mortgage Loan"). *See* Exhibit B. While the Amended Complaint alleges that the Mortgage Loan was later sold to America's Servicing Company, a company owned by Wells Fargo, Compl. ¶ 10, neither America's Servicing Company nor Wells Fargo are the owner of the Mortgage Loan as the Amended Complaint acknowledges in naming the securitized trust and its indenture trustee a co-defendant. America's Servicing Company is simply a trade name for Wells Fargo, the servicer of the loan.[1]

On February 24, 2009, Plaintiff filed a complaint in Magisterial District Court in Bucks County, Pennsylvania against Wells Fargo and other defendants alleging violations of TILA. The matter was removed to this Court on March 24, 2009. On April 12, 2009, Plaintiff filed two additional complaints in Magisterial District Court in Bucks County against the same defendants alleging violations of other consumer protection laws. At a May 1, 2009, status conference with the Court, the Plaintiff was directed to file an Amended Complaint consolidating the previous

---

[1] Norwest Mortgage, Inc. merged with Wells Fargo in 1998. Also, America's Servicing Company is not a separate corporate entity, but rather a d/b/a of Norwest Mortgage Inc., as evidenced by the Pennsylvania Secretary of State filing attached as Exhibit A.

complaints and asserting all claims against Wells Fargo and other defendants on or before July 1, 2009. Plaintiff's Amended Complaint, docketed on July 7, 2009, asserts 39 counts[2] against Wells Fargo based on the TILA, RESPA, HOEPA, UTPCPL, breach of fiduciary duty, FCRA and FDCPA.

## LEGAL STANDARD

Pursuant to Fed R. Civ. P. 12(b)(6), a complaint may be dismissed "for failure to state a claim upon which relief can be granted." Dismissal for failure to state a claim is appropriate when it clearly appears that a plaintiff can prove no set of facts to support the claim entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir. 1984). A Rule 12(b)(6) motion tests the legal sufficiency of a claim accepting the veracity of a plaintiff's allegations. *See Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). A claim should be dismissed when the complaint does not allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff may not meet its burden by simply asserting conclusions and elements of claims as "facts." Although "a court must accept as true all allegations contained in a complaint," the Supreme Court has recently made clear that this principle is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1944 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The Supreme Court emphasized that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

---

[2] While the Amended Complaint purports to have 40 counts, Count 14 appears to be inadvertently skipped leaving 39 counts. For ease of reference, the claims will be referred to by the numbers presented in the Amended Complaint.

*Ashcroft*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).  Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft*, 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  As set forth further below, Plaintiff has not made the requisite showing of entitlement to relief.

## ARGUMENT

The Amended Complaint lacks sufficient facts to support Plaintiff's alleged claims and misconstrues the statutes and regulations relied upon.  Many of Plaintiff's claims are also barred by the applicable statute of limitations.  As a result, the entire Amended Complaint should be dismissed.

**I.      PLAINTIFF'S RESPA CLAIMS ARE BOTH BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS AND INSUFFICIENTLY <u>PLEADED.</u>**

Counts 1 through 9 and 39 of the Amended Complaint allege various violations of RESPA.  Counts 1 through 9, however, are barred by RESPA's one year statute of limitations. Further, even if the claims were not barred by the statute of limitations, they either misconstrue the cited regulation or are insufficiently pleaded and should be dismissed.[3]

### A.   The One-Year Statute of Limitations Bars Plaintiff's RESPA Claims.

12 U.S.C. § 2614, which establishes the jurisdiction of courts and limitations for RESPA claims, states that "[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court . . . within 3 years in the case of a violation

---

[3] If the Court determines that any of Plaintiff's RESPA claims should not be dismissed, the Court should strike Plaintiff's requests for general damages, punitive damages, special damages, treble damages and rescission.  12 U.S.C. § 2605(f)(1) only authorizes actual damages and statutory damages in the amount of $1,000 for violations of RESPA.

of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation." Only these three sections create a private right of action under RESPA.[4] Of these three sections, only section 2607, which creates a prohibition against kickbacks and unearned fees, could apply to Counts 1 through 9 of the Amended Complaint. Section 2605 provides a cause of action for deficiencies in disclosures regarding the servicing of the mortgage loan, failure of a lender to respond to a qualified written request and administration of escrow accounts. Only Count 39 alleges violations of section 2605. Section 2608 creates a prohibition against lenders demanding borrowers purchase title insurance from a particular title company. None of Plaintiff's claims allege Wells Fargo forced Plaintiff to purchase title insurance from a favored title company. Thus, Counts 1 through 9 can only allege violations of section 2607, which are subject to a one-year statute of limitations. As such, they are time-barred.

"It is well-settled law that in 'closed-end credit' transactions, like the [transaction] at issue, the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when the defendant performs by transmitting the funds to plaintiffs." *Cardiello v. Money Store, Inc.,* No. 00-7332, 2001 U.S. Dist. LEXIS 7107, at *11-12 (S.D.N.Y. Jun. 1, 2001) (collecting cases). As indicated on the executed HUD-1 attached as Exhibit B,[5] the

---

[4] Plaintiff relies on other sections of RESPA that do not provide a private right of action, including section 2604 in Count 1, and section 2603 in Counts 3 and 4. These claims should be dismissed. *See* 12 U.S.C. § 2614 (limiting RESPA civil liability to claims brought under Sections 2605, 2607 and 2608). Further, Count 7, which alleges Wells Fargo failed to provide a good faith estimate within 3 days after submission of an application also should be dismissed because violation of 12 C.F.R. § 3500.7 does not provide for a private right of action. *See Brophy v. Chase Manhattan Mortg. Co.*, 947 F. Supp. 879, 881-883 (E.D. Pa. 1996) (holding that 12 U.S.C. § 2604 does not provide a private right of action to remedy an alleged failure to provide a good faith estimate); *see also Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997) (affirming dismissal of RESPA claims based on failure to issue a good faith estimate because such a violation does not establish a private right of action).

[5] The Court may consider the various exhibits attached to the Motion as they are undisputedly authentic and Plaintiff bases his claims on these documents without attaching them to the Amended Complaint. *Miller v. Clinton County*, 544 F.2d 542, 550 (3d Cir. 2008). Appending these documents does not convert the Motion to a motion for summary judgment. *Id.*

Mortgage Loan closed on September 15, 2006 and funds were disbursed to Plaintiff on September 20, 2006. Plaintiff's initial lawsuit was filed on February 24, 2009, almost two and one half years after the closing. Thus, Counts 1 through 9 of the Amended Complaint are barred by the statute of limitations and should be dismissed. *See Roche v. Sparkle City Realty*, No. 08-2518, 2009 U.S. Dist. LEXIS 51555, at *11-12 (E.D. Pa. June 15, 2009) (holding RESPA claim barred by one-year statute of limitations).

### B. Plaintiff's RESPA Claims do not Establish a Viable Cause of Action.

Even if the statute of limitations did not bar Plaintiff's RESPA claims, the claims either misconstrue the cited regulation or are insufficiently pleaded. Count 1 alleges that Plaintiff never received a special information booklet at the time of application for adjustable rate loans under 24 C.F.R. 3500.6. Compl. ¶ 32. First, failure to comply with this section does not create a private right of action under RESPA, as discussed in footnote 4. Second, section 3500.6(a)(3)(i) states that a lender need not provide the booklet to a borrower in a refinance transaction. As indicated on the executed Uniform Residential Loan Application attached as Exhibit C, the purpose of Plaintiff's loan was to refinance an existing mortgage. Thus, section 3500.6 does not apply to this transaction and Count 1 should be dismissed.

Counts 2, 5, 6 and 8 allege violations of 24 C.F.R. 3500.14 for charging Plaintiff various "unearned" fees at closing without prior disclosure. Compl. ¶¶ 38, 56, 62, 73. The fees contested in Counts 2, 5 and 8 are amounts paid to Community Lending, who Plaintiff identifies as his mortgage broker, for a broker processing fee of $550, an overnight fee of $20, and a broker fax fee of $35, each of which was disclosed on the HUD-1. *See* Exhibit B, Lines 805, 806, 808. Importantly, these amounts were paid for services rendered by Community Lending and were not charged by the lender. (Notably, Plaintiff has not joined Community Lending to

this suit and does not allege that they did not perform the services for which he utilized them.) Under RESPA, no liability may arise where the payment to a third party is bona fide compensation for goods provided or services performed. 12 U.S.C. § 2607(c). Plaintiff makes the general assertion that the processing fee, overnight fee and fax fee were "unearned" but offers no specific information to substantiate this allegation.

In Count 6, Plaintiff contests the lender's collection of pro-rated interest in the amount of $927.99 for his use of the loan funds from September 20, 2006 (the day the loan was funded) to October 1, 2006 (the day Plaintiff's first payment was due). Interest is not a kickback or fee paid to a third party and thus is not subject to the strictures of section 3500.14. Further, Plaintiff took possession of the loan funds on September 20, 2006, and by executing the note and mortgage agreed to pay interest from that date until the loan is paid in full. Thus, it defies logic for Plaintiff to allege that the lender did not earn the interest charged for the time between the day the loan was funded and the day Plaintiff's first payment was due. Compl. ¶ 62. Accordingly, Count 6 should be dismissed with prejudice.

Count 9 alleges that charging a "yield spread premium" in excess of normal market fees also violates 24 C.F.R. 3500.14. While RESPA does not explicitly address the legality of yield spread premiums, they are not illegal if they are "earned" in accordance with section 8(c) of RESPA, which provides that:

> Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed . . . .

12 U.S.C. § 2607(c); *see* 24 C.F.R. § 3500.14(g)(1)(iv).

Plaintiff does not allege in the Amended Complaint that the yield spread premium was unearned.[6]  Compl. ¶ 79.  He merely alleges that a yield spread premium was charged, which is not *per se* illegal.  *Warburton v. Foxtons, Inc.*, No. 04-2474, 2005 U.S. Dist. LEXIS 39615, at *14 (D.N.J. June 13, 2005); *see also Taylor v. Nelson*, No. 02-6558, 2006 U.S. Dist. LEXIS 3860, at *41 (E.D. Pa. February 1, 2006) (holding RESPA permits fees paid for services actually performed including yield spread premiums).  Further, not only was the yield spread premium disclosed on the HUD-1 as required by RESPA, *see* Exhibit B, Plaintiff also acknowledged in an executed authorization his consent to payment of the yield spread premium to Community Lending.  *See* Exhibit D.  Wells Fargo fully complied with its disclosure requirements of the yield spread premium under RESPA.  Thus, Count 9 of the Amended Complaint does not sufficiently plead a claim upon which relief can be granted and should be dismissed.

### C.  Wells Fargo Complied with its Obligations to Respond to Plaintiff's Alleged Qualified Written Requests.

Count 39 appears to allege a violation of 12 U.S.C. § 2605(e), which requires that a servicer of a mortgage loan who receives a qualified written request ("QWR") from a borrower asking for information relating to the servicing of his/her loan acknowledge receipt of the QWR within 20 days.  12 U.S.C. § 2605(e)(1)(A).  Further, servicers have 60 days following receipt of a QWR to make the requested changes in the borrower's account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of the representative, office or department of the servicer who can answer questions about the account.  12 U.S.C. § 2605(e)(2).

---

[6] Indeed, Plaintiff cannot argue that the yield spread premium was unearned because the broker successfully placed the loan for him.

A QWR under RESPA must be written correspondence to the servicer that includes (1) the name and account number of the borrower and (2) a statement of the reasons for the belief of the borrower that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). Plaintiff appears to allege that he sent separate QWRs on March 29, 2008,[7] May 29, 2008, June 21, 2008 and February 24, 2009,[8] Compl. ¶ 229, and that Wells Fargo failed to follow the proper procedure under RESPA. Compl. ¶ 228. While Plaintiff does not refer to which procedure Wells Fargo allegedly failed to follow, it is assumed for purposes of this motion that Plaintiff is alleging he did not receive timely responses to his alleged QWRs.[9]

Plaintiff's March 26, 2008 letter disputes his mortgage balance, escrow balance, his monthly payment and the adjustment on his interest rate. *See* Exhibit E. From the earliest date-stamp on the letter, it was received by Wells Fargo on March 28, 2008. *Id.* Pursuant to section 2605(e)(1)(A) of RESPA, Wells Fargo had to acknowledge receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays), and provide a substantive response within 60 days. Here, the 20th day was April 25, 2008. On that date, Wells Fargo not only acknowledged receipt of Plaintiff's March 28, 2008 letter, but provided the results of its review of Plaintiff's account, thus complying with the requirements of RESPA well in advance of the 60 day deadline. *See* Exhibit I.

---

[7] This date appears to be an error. As indicated on Exhibit E, Wells Fargo believes Plaintiff is referring to his letter dated March 26, 2008.

[8] Each alleged QWR is attached as Exhibits E through H. Further, Wells Fargo notes that no correspondence dated February 24, 2009 was received from Plaintiff. Wells Fargo assumes Plaintiff is referring to the initial complaint, which was filed in Magisterial District Court in Buck County on that date. The complaint, however, cannot be considered a QWR. *See Kemezis v. Matthew*, No. 07-5086, 2008 U.S. Dist. LEXIS 47330, at * 19 (E.D. Pa. June 19, 2008) (holding complaint not a QWR because it did not provide sufficient detail to the servicer about how plaintiff's account is in error and what information plaintiff is seeking).

[9] Wells Fargo disputes that the correspondence received from Plaintiff were, in fact, QWRs. Viewing the allegations in the light most favorable to Plaintiff, however, for purposes of this motion only, this analysis will assume such correspondence as QWRs.

Plaintiff's May 29, 2008 letter again disputes his mortgage balance, escrow balance, his monthly payment and the rate adjustment on his interest rate. *See* Exhibit F. This letter, received by Wells Fargo on June 2, 2008, requests the same information regarding Plaintiff's account as the March 26, 2008 letter, and thus is cannot be considered a new QWR. Wells Fargo, nonetheless, sent two substantive responses to this letter within 20 days of receipt, one dated June 16, 2008, attached as Exhibit J, and one dated June 18, 2008 attached as Exhibit K. Consequently, if Plaintiff's May 29, 2008 letter can be considered a new QWR, Wells Fargo again complied with the requirements of RESPA.

Plaintiffs letter dated June 21, 2008, and received by Wells Fargo on June 26, 2008, addresses an alleged derogatory entry on his credit report. *See* Exhibit G. It neither requests or disputes any information about his account nor offers any reasons for his dispute of the amount due on the loan, and thus is not a QWR. *See* 12 U.S.C. § 2605(e)(1)(B)(ii) (requiring a QWR include a statement of reasons for the borrower's belief that the account is in error); *Pettie v. Saxon Mortgage Services, et al.*, 2009 U.S. Dist. LEXIS 41496, *6-*7 (W.D. Wash. May 12, 2009) (holding section 2605(e)(1)(B) requires a disputing party give specific "reasons" for claiming an account is in error). Again, however, Wells Fargo provided a substantive response to this letter within 20 days, on July 9, 2008. *See* Exhibit L. Therefore, even if Plaintiff's June 21, 2008 letter can be considered a QWR, Wells Fargo complied with the requirements of RESPA.

Plaintiff's letter dated June 26, 2008 memorializes a telephone conversation with an employee at Wells Fargo and again requests alleged derogatory information on his credit report be removed. *See* Exhibit H. As discussed above, this letter does not ask for information regarding Plaintiff's account and therefore is not a QWR. Second, the subject matter of the letter

10

is identical to Plaintiff's letter dated June 21, 2008 and thus cannot be considered a new QWR. Third, even if it can be considered a QWR, Wells Fargo sent a letter also dated June 26, 2008, and attached as Exhibit M, substantively addressing Plaintiff's concerns and again complying with the requirements of RESPA.

Next, Plaintiff alleges that Wells Fargo "failed to provide the name, person, and phone number who can resolve the dispute." Compl. ¶ 229. Plaintiff's allegation that he did not receive such information is incorrect. As evidenced by Wells Fargo's responses to Plaintiff's various letters, attached as Exhibits I through M, each contains a paragraph that reads, "If you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and 6 p.m., in your time zone." *See* Exhibits I-M. Accordingly, Wells Fargo complied with the requirements of RESPA by providing the name and phone number of the department of the servicer that could provide assistance to the Plaintiff. 12 U.S.C. § 2605(e)(2)(C)(ii).

To the extent Plaintiff asserts that Wells Fargo provided inaccurate information regarding Plaintiff's payment history to a consumer reporting agency during a sixty-day time period, this claim is insufficiently pleaded. The Amended Complaint makes no allegation that Wells Fargo reported any information to a consumer reporting agency within a particular 60-day period. It merely alleges that "[d]efendant(s) failed to protect the credit rating of the Plaintiff during the 60 day protection period while in dispute." Compl. ¶ 230. Wells Fargo is left go guess what information was reported to whom and when this 60-day period occurred. Accordingly, Count 39 does allege adequate facts to support a claim and should be dismissed. *Jones v. Select Portfolio Servicing, Inc.*, No. 08-972, 2008 U.S. Dist. LEXIS 33284, at *29-30 (E.D. Pa. April

23, 2008) (dismissing claim under section 2605(e)(3) for failure to put defendant on adequate notice of a viable claim under RESPA).

## II.    PLAINTIFF DOES NOT PROPERLY ALLEGE CLAIMS UNDER TILA

All of Plaintiff's claims under TILA (Counts 10-13, 18) fail to state a claim for rescission because there are no allegations that the lender either failed to provide the Notice of Right to Cancel or the material disclosures required by TILA. The TILA disclosure statement contains the material disclosures required by the statute and the Notice of Right to Cancel complies with TILA. *See* Exhibits N & O. Further, any allegations that the lender failed to make proper disclosures are incorrect as indicated by the various exhibits attached to this motion.[10]

12 C.F.R. § 226.23 establishes a consumer's right to rescind a credit transaction. A consumer may exercise the right to rescind until midnight of the third business day following consummation of the transaction, delivery of the proper notice, or delivery of all material disclosures, whichever occurs last. 12 C.F.R. § 226.23(a)(3). The Mortgage Loan was consummated on September 15, 2006. Plaintiff was given all the required notices and disclosures no later than the date of closing. Accordingly, Plaintiff had three days from September 15, 2006 to rescind the transaction and did not do so. He cannot now seek rescission

---

[10] If the Court determines that any of Plaintiff's TILA claims should not be dismissed, the Court should strike Plaintiff's requests for compensatory, general, punitive, special and treble damages. 15 U.S.C. § 1640; s*ee Byrd v. Frost*, No. 08-4949, 2008 U.S. Dist. LEXIS 104899, at *8 (E.D. Pa. Dec. 29, 2008) (treble damages unavailable under TILA); *Busse, et al. v. Hornebank LLC, et al.*, No. 07-3495, 2009 U.S. Dist. LEXIS 13315, at *19 (D.N.J. Feb. 18, 2009) (claims for compensatory and punitive damages under TILA are subject to a one-year statute of limitations which begins to run from the date of closing); *Colanzi v. Savings First Mortgage, LLC*, No. 07-3632, 2008 U.S. Dist. LEXIS 3216, at *6 (E.D. Pa. Jan. 15, 2008) (statute of limitations for statutory damages under TILA is one-year from date of closing). Plaintiff does not allege the one-year statute of limitations should be extended by equitable tolling and further, equitable tolling would be inappropriate in this matter because Wells Fargo has not actively misled Plaintiff, Plaintiff has not been prevented from asserting his rights in some extraordinary way and Plaintiff has not timely asserted his rights in an inappropriate forum. *See Busse*, 2009 U.S. Dist. LEXIS, at *20-21. Thus, should any TILA claims survive the Motion, the Court should strike from the Amended Complaint Plaintiff's request for compensatory, general, punitive, special and treble damages.

of the Mortgage Loan as the rescission period has run and he has not alleged, nor is he entitled to, an extended right to rescind.

Further, each TILA claim is insufficiently pleaded. Count 10 of the Amended Complaint alleges that the lender failed to provide a statement that "disclosure forms are available for the creditor's of other variable-rate loan programs" under 12 C.F.R. § 226.19(b)(2)(xii). Compl. ¶ 84. Plaintiff, however, quotes the language of the regulation out of context. Section 226.19(b)(2)(xii) states:

> (b) If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application is provided or before the consumer pays a nonrefundable fee, whichever is earlier: . . . (2) a loan-program disclosure for each variable-rate program in which the consumer expresses an interest. The following disclosures, as applicable, shall be provided: . . . (xxi) a statement that disclosure forms are available for the creditor's other variable-rate loan programs.

Plaintiff does not allege that he expressed an interest in any particular variable-rate program. He also does not allege that the originating lender offered other variable-rate loan programs. Accordingly, Plaintiff does not plead his claim sufficiently and Count 10 should be dismissed.

Finally, even assuming Plaintiff has sufficiently alleged a claim with respect to the delivery of the variable rate loan disclosures, Wells Fargo would still be entitled to dismissal of Count 10, which seeks rescission of the Mortgage Loan, because a failure to provide the early variable rate loan disclosures does not give the borrower an extended right to rescind the transaction beyond the initial three-day rescission period.

For many consumer mortgage transactions, including the one involved in this case, the borrower has a right to rescind the loan within three business days after the latest of three events: (1) the loan closing; (2) the delivery of a disclosure of the right to rescind; or (3) the delivery of "material disclosures." *See* 12 C.F.R. 226.23(a)(3), n.48. If, however, a proper rescission notice and material disclosures are not provided, the loan can be rescinded for up to a maximum of three years after the loan closing. *See* 12 C.F.R. 226.23(a)(3); *Beach v. Owcen Federal Bank,* 523 U.S. 410, 413 (1998) (holding same).

Here, Plaintiff appears to claim that the early variable rate loan disclosures are "material" disclosures that extend the rescission right for up to three years when they are not provided by the lender. On the contrary, as a matter of law, the early variable rate disclosures are not "material" disclosures. First, the early variable rate disclosures are not identified in the list of "material disclosures" in footnote 48 to 12 C.F.R. 226.23(a)(3). Second, the Official Staff Commentary to Regulation Z discusses the concept of a "material" disclosure for rescission purposes and specifically states:

> Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of a variable-rate feature. Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions.

Official Staff Commentary, § 226.23(a)(3)-2.

In *Oscar v. Bank One, N.A.*, the court interpreted this provision of the Commentary to mean that the only variable rate disclosure that is "material" (and which therefore may extend the rescission right when not provided) is the requirement that the consumer be informed of the existence of the variable rate feature. *Oscar v. Bank One, N.A.*, No. 05-5928, 2006 U.S. Dist. LEXIS 6410, at *10 (E.D. Pa. Feb. 17, 2006); *see also Pulphus v. Sullivan*, No. 02-C-5794, 2003 U.S. Dist. LEXIS 7080, at *43 (N.D. Ill. Apr. 28, 2003) ("we will hold . . . that the only variable

rate disclosure that is material within the meaning of 12 C.F.R. § 226.23(a)(3) is the disclosure that a loan has a variable interest rate feature."). Here, there is no dispute that the Plaintiff was made aware of the existence of the variable rate feature. *See* Exhibit N ("This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier."). Since the additional early variable rate disclosures under Section 226.19(b) are not "material disclosures," the alleged failure to deliver them does not extend the rescission right.

Count 11 presents only one substantive allegation, which states that Wells Fargo "failed to make all disclosures available before consummation" under section 12 C.F.R. § 226.18. Compl. ¶ 89. It does not, however, allege which disclosures Plaintiff failed to receive. Acknowledging that Fed. R. Civ. P. 12 permits a liberal pleading standard and Plaintiff is proceeding *pro se*, it is still incumbent on the Plaintiff to allege the specific disclosures that were allegedly not provided. *See Wright v. Castle Point Mortgage, et al.*, No. 05-4851, 2006 U.S. Dist. LEXIS 32761, at *8-*9 (D.N.J. May 22, 2006) (dismissing claim where plaintiff failed to allege which disclosures were lacking from disclosure statements). It would be unreasonable to expect Wells Fargo to respond to Count 11 without requiring Plaintiff to allege more facts to support his claim. Thus, Count 11 should be dismissed as insufficiently pleaded.

Count 12 alleges that Wells Fargo failed to disclose the payment schedule required by 12 C.F.R. § 226.18(g), which includes the number, amounts, and timing of payments scheduled to repay the obligation. Compl. ¶ 94. This allegation is erroneous. The information required to be disclosed under section 226.18(g) is found on the Truth-in Lending Disclosure Statement, executed by Plaintiff and attached as Exhibit N. This document clearly states the number, amount and timing of the payments required to repay the Mortgage Loan in the section titled

"Payment Schedule."  Accordingly, Count 12 of the Amended Complaint also should be dismissed.

Count 13 alleges that the lender "failed to disclose the total payments, using that term, and a descriptive explanation such as 'The amount you will have paid when you have made all scheduled payments'. 12 C.F.R. § 226.18(h)."  Compl. ¶ 99.  Again, this allegation is inaccurate. The executed Truth-in Lending Disclosure Statement attached as Exhibit N contains a box titled "Total of Payments," which is described as "[t]he amount you will have paid after you have made all payments as scheduled" and includes the amount Plaintiff would have paid had he made all 360 payments.  *See* Exhibit N.  Thus, Count 13 is improper and should be dismissed.

### III.    PLAINTIFF'S CLAIMS ALLEGING VIOLATIONS OF HOEPA MUST BE DISMISSED WITH PREJUDICE AS THE MORTGAGE LOAN IS NOT SUBJECT TO HOEPA.

Counts 15-17 and 19 of the Amended Complaint allege violations of HOEPA.  In order for HOEPA protections to apply, however, a loan must meet one of two high-cost loan triggers: (1) the annual percentage rate exceeds by eight percent for first-lien loans, the yield on Treasury securities of comparable periods of maturity as of the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (2) the total of all the loan's points and fees exceeds eight percent of the loan or $400 (adjusted for inflation), whichever is greater.    15 U.S.C. § 1602(aa)(1); 12 C.F.R. § 226.32(a)(1)(i), (ii); *In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, 418 F.3d 277, 304, n. 22, (3d Cir. 2005).  Each test is described below.

The Amended Complaint alleges Plaintiff applied for the Mortgage Loan on August 24, 2006. Compl. at ¶ 7. The 30-year Treasury rate on July 17, 2006,[11] was 5.10%. *See, e.g.*, Daily Treasury Yield Curve Rates, *available at* http://www.treasury.gov/offices/domestic-finance/debt-management/interest-rate/yield_historical_2006.shtml. Thus, in order for the Mortgage Loan to be subject to HOEPA, the annual percentage rate ("APR") would have to exceed 13.10% (8 plus 5.10). However, the APR on the Mortgage Loan is 11.4442%, as indicated on the Truth-in Lending Disclosure attached as Exhibit N, and Plaintiff does not challenge the accuracy of the APR calculations. Accordingly, the Mortgage Loan is not subject to HOEPA under the first test.

To be considered a HOEPA loan under the second test, the total points and fees must exceed eight percent of the loan amount. As indicated on Line 202 of the HUD-1 attached as Exhibit B, the principal amount of the Mortgage Loan at the time of closing was $382,500. Eight percent of this amount is $30,600. As indicated on Line 1400 of the HUD-1, the total amount of points and fees charged to the Plaintiff was $16,602.49, which is approximately 4.34% of the Mortgage Loan principal and within the statutory tolerance. Consequently, the Mortgage Loan is not subject to HOEPA and Counts 15-17, and 19 should be dismissed with prejudice.

## IV. PLAINTIFF'S CLAIMS ALLEGING BREACH OF FIDUCIARY DUTY FAIL BECAUSE NO FIDUCIARY DUTY EXISTS BETWEEN A LENDER AND BORROWER.

Counts 20 through 22 allege Wells Fargo breached a fiduciary duty to Plaintiff to obtain the best loan available at the time of the refinance. Compl. ¶¶ 129, 134, 139. No such duty exists and Counts 20-22 should be dismissed.

---

[11] July 15, 2006 was a Saturday and no rate was published.

Plaintiff's breach of fiduciary duty claims fail because there are no facts alleged to justify imposing such a duty on the lender. It is settled law in Pennsylvania that a lender dealing at arms-length with a borrower has no fiduciary duty to that borrower. *See Federal Land Bank v. Fetner*, 410 A.2d 344, 348 (Pa. Super. Ct. 1979) (citing *Grace et ux. v. Moll*, 132 A. 171 (Pa. 1926); *Temp-way Corp. v. Continental Bank*, 129 B.R. 299 (E.D. Pa. 1992) (A lender "does not ordinarily owe a fiduciary duty to a borrower."). A lender does not owe a duty to a borrower unless a confidential relationship is created whereby the creditor gains substantial control over the debtor's business affairs. *Stainton v. Tarantino*, 637 F. Supp. 1051, 1066 (E.D. Pa. 1986). Courts generally insist on a strong showing of control over the debtor before finding that a confidential relationship is established. *See NCNB Nat. Bank v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987) ("actual day to day involvement in the management and operations or the ability to compel the borrower to engage in an unusual transaction is required to show that a lending institution had control over the borrower."). In other words, a creditor must take absolute control, not just take steps to minimize its risk, in order to be considered a fiduciary to the borrower. *James E. McFadden, Inc. v. Baltimore Contractors, Inc.*, 609 F. Supp. 1102, 1105 (E.D. Pa. 1985).

Plaintiff's allegations in Counts 20-23 do not show that any relationship existed between himself and the lender. The transaction was simply an arms-length refinance of Plaintiff's mortgage loan. Under these facts, the lender did not have a fiduciary duty to the Plaintiff and Counts 20-23 should be dismissed with prejudice.

## V. THE COMPLAINT OFFERS NO EVIDENCE THAT WELLS FARGO VIOLATED CONSUMER PROTECTION LAWS.

Counts 23 to 37 in the Amended Complaint[12] are comprised of alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1 *et seq*. Many of these claims are "piggy-back" claims of RESPA, TILA, HOEPA and breach of fiduciary duty claims previously discussed[13]. As discussed above, the RESPA, TILA and HOEPA claims are inadequate and should be dismissed. It follows that any alleged UTPCPL claims based on the same allegations should also be dismissed.[14]

Also, the Amended Complaint does not present any sufficiently pleaded causes of action under the UTPCPL because none of Plaintiff's claims plead the elements of fraud with particularity as required by Fed. R. Civ. P. 9(b). Indeed, Plaintiff does not even cite to the specific provision of the UTPCPL that he believes was violated, and leaves Wells Fargo to speculate as to which subsection of the UTPCPL is invoked here.

For purposes of this Motion, Wells Fargo must assume that Plaintiff's claims are based on 73 P.S. § 201-2(4)(xxi). This section provides that a person violates the UTPCPL by "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). In order to establish a cause of action under this "catch-all" provision, a plaintiff must prove elements of common-law fraud. *See Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005) (interpreting existing Pennsylvania state court precedent as requiring those suing under the UTPCPL to make out the

---

[12] Count 32 is identical to Count 30 and Count 36 is identical to Count 37. These duplicative claims should also be dismissed.

[13] The following UTPCPL counts contain identical allegations as those counts in parentheses: Count 27 (Count 4); Count 28 (Count 9); Count 29 (Count 10); Count 30 (Count 12); Count 31 (Count 13); Count 33 (Count 15); Count 34 (Count 16); Count 35 (Count 18); and Count 36 (Count 20).

[14] If the Court determines that any of Plaintiff's UTPCPL claims should not be dismissed, the Court should strike Plaintiff's requests for general damages, special damages and rescission. *See* 73 P.S. § 201-9.2 (describing statutory damages available under UTPCPL). Further, in order to be awarded treble and punitive damages under the UTPCPL, a defendant must have engaged in outrageous or unconscionable behavior. Plaintiff's allegations neither allege nor support such a finding and thus the Court should also strike his requests for treble and punitive damages.

elements of common law fraud); *Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 9-11 (Pa. Super. Ct. 2004) (UTPCPL claims must meet the elements of common law fraud); *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000) (holding same). In order to establish common law fraud, a plaintiff must prove 1) a misrepresentation of a material fact; 2) scienter; 3) an intention by the maker to induce action; 4) justifiable reliance by the recipient upon the misrepresentation; and, 5) damage to the recipient as a proximate result. *See Rizzo v. Michner*, 584 A.2d 973, 980 (Pa. Super. Ct. 1990).

Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985).

Here, the Amended Complaint is devoid of any misrepresentation made to Plaintiff by the lender, any allegation that the lender intended to defraud him, any allegations that he justifiably relied on a misrepresentation, and that he suffered damages proximately caused by such justifiable reliance. The sparse allegations against the defendants in Counts 23 - 37 of the Amended Complaint not only fail to plead fraud with particularity but also fail to plead *any facts* from which a reasonable inference of fraudulent conduct could be drawn. Accordingly, Plaintiff's Amended Complaint lacks sufficient allegations to assert any legitimate claim under the UTPCPL and claims 23 through 37 should be dismissed.

## VI. PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A CLAIM UNDER THE FAIR CREDIT REPORTING ACT.

To prevail on a Fair Credit Reporting Act ("FCRA") claim against a furnisher of information, a plaintiff must prove that he notified a credit reporting agency of the dispute, the credit reporting agency notified the furnisher of information, and the furnisher of information failed to investigate or rectify the disputed charge. *Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001). Courts have dismissed complaints when the plaintiffs have failed to allege they first disputed the information with a credit reporting agency. *Beisel v. ABN Ambro Mortg., Inc.*, No. 07-2219, 2007 U.S. Dist. LEXIS 59234, at *4 (E.D. Pa. August 10 2007).

The Amended Complaint contains no allegations that Plaintiff disputed any information with a credit reporting agency. Rather, Plaintiff appears to allege that he disputed his payment history with Wells Fargo, the furnisher of the information, not the credit reporting agency. Compl. ¶¶ 220-221. "The furnisher of information does not have FCRA duties until the complainant disputes it to the credit reporting agency and the credit reporting agency provides [the furnisher] with notice." *Id.* at *5 (citing *Sheffer v. Experian Info. Solutions, Inc.*, 249 F. Supp. 2d 560, 562 (E.D. Pa. 2003) and *Jaramillo*, 155 F. Supp. 2d at 363). By failing to report the dispute with a credit reporting agency, Plaintiff has failed to state a claim for relief under the FCRA and Count 38 should be dismissed.[15] *Id.* at *6; 15 U.S.C. § 1681s-2(b).[16]

---

[15] If the Court determines that Plaintiff's FCRA claim should not be dismissed, the Court should strike Plaintiff's requests for general damages, special damages, treble damages and rescission. These remedies are simply not available under FCRA. 15 U.S.C. § 1681(n), (o). Further, punitive damages are only available in the case of willful noncompliance. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). Plaintiff's allegations neither allege nor support such a finding and thus the Court should also strike his requests for punitive damages.

[16] Wells Fargo's alleged misconduct appears to be governed by 15 U.S.C. § 1681s-2(a), which addresses when furnishers of information have reported alleged inaccurate information after receiving a customer complaint. This subsection eliminates a private right of action and authorizes only the Federal Trade Commission with jurisdiction to hear this type of case. *Beisel*, 2007 U.S. Dist. at *5, n.3 (citing *Fino v. Key Bank of New York*, No. 00-375E, 2001 U.S. Dist. LEXIS 24358 (W.D. Pa. July 27, 2001).

## VII. WELLS FARGO IS NOT A "DEBT COLLECTOR" UNDER THE FAIR <u>DEBT COLLECTIONS PRACTICES ACT.</u>

Plaintiff incorrectly alleges that Wells Fargo owns the Mortgage Loan. Compl. ¶ 10. The Mortgage Loan is actually owned by Deutsche Bank National Trust Company, a co-defendant, as discussed at the initial status conference in this case. Wells Fargo is merely the servicer of the Mortgage Loan. Importantly, loan servicers are not "debt collectors" under the Fair Debt Collection Practices Act ("FDCPA") unless the debt being serviced was in default at the time it was obtained by the servicer. *See* 15 USC § 1692a(6)(F); *Dawson v. Dovenmuehle Mortgage, Inc.*, No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002) (FDCPA applies to a mortgage servicer only where mortgage at issue was in default at time servicing began).

Here, Plaintiff does not allege that the Mortgage Loan was in default at any point, let alone at the time Wells Fargo began servicing the Mortgage Loan. Absent such an allegation, Plaintiff has not stated a cognizable claim against Wells Fargo under the FDCPA. *See Whittingham v. Mortgage Electronic Registration Services, Inc.*, No. 06-3016, 2007 WL 1456196, at *7 (D.N.J. May 15, 2007) (FDCPA claim against mortgage servicer dismissed where plaintiff failed to allege that mortgage was in default at the time servicer began servicing the loan). Accordingly, Count 40 is legally insufficient to withstand a Rule 12 motion.[17]

---

[17] If the Court determines that Plaintiff's FDCPA claim should not be dismissed, the Court should strike Plaintiff's requests for general damages, special damages, treble damages, punitive damages and rescission. These remedies are not available under the FDCPA. 15 U.S.C. § 1692(k); *see Whiteman v. Burton Neil & Assocs., P.C.*, No. 07-2289, 2008 U.S. Dist. LEXIS 71225 at *7 (M.D. Pa. Sept. 19, 2008) ("The damages section of the FDCPA does not provide for punitive damages.").

## CONCLUSION

For the reasons stated above, the Amended Complaint fails to state a claim against upon which relief can be granted. Accordingly, Wells Fargo respectfully requests that the Court dismiss the Amended Complaint in its entirety and grant such other and further relief as may be just and equitable.

Respectfully submitted,

**BLANK ROME LLP**

Dated: July 20, 2009                By: */s/ John Lucian*
                                   John Lucian (I.D. No. 92317)
                                   Gregory F. Vizza (I.D. No. 207095)
                                   One Logan Square
                                   130 N. 18th Street
                                   Philadelphia, PA 19103
                                   (215) 569-5500
                                   (215) 569-5555 (fax)
                                   e-mail: lucian@blankrome.com
                                            vizza@blankrome.com

                                   Attorneys for Defendant, Wells Fargo Home Mortgage, Inc.

# EXHIBIT A



# Corporations

Search
By Business Name
By Business Entity ID
Verify
Verify Certification
Online Orders
Register for Online
Orders
Order Good Standing
Order Certified Documents
Order Business List
My Images
Search for Images

## Business Entity
## Filing History
**Date:** 7/17/2009 (Select the link above to
view the Business
Entity's Filing History)

## Business Name History

| Name | Name Type |
|------|-----------|
| AMERICA'S SERVICING COMPANY | Current Name |

## Fictitious Names - Domestic - Information

| | |
|---|---|
| **Entity Number:** | 2917037 |
| **Status:** | Active |
| **Entity Creation Date:** | 1/4/2000 8:42:09 AM |
| **State of Business.:** | PA |
| **Principal Place of Business:** | MAC X2406-011 1 HOME CAMPUS DES MOINES PA 50328-1 |
| **Mailing Address:** | No Address |

## Owner Information
**Owner(s) for:**                AMERICA'S SERVICING
COMPANY

## Owners
**Name:**                        **NORWEST MORTGAGE INC.**
**Mailing Address:**             [Address Not Available]

Home | Site Map | Site Feedback | View as Text Only | Employment

# EXHIBIT B

OMB NO. 2502-0265

**REDACTED**

| A. | | B. TYPE OF LOAN | |
|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1.☐FHA  2.☐FmHA  3.☐CONV. UNINS.  4.☐VA  5.☐CONV. INS. | | |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER  STA-57011-V | 7. LOAN NUMBER | |
| | 8. MORTGAGE INS CASE NUMBER | | |

C. *NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

1.0  3/86  (STA-57011-V.PFD/STA-57011-V/35)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LENDER |
|---|---|---|
| Kenneth Taggart | TRUE AND CERTIFIED COPY OF THE ORIGINAL DOCUMENT  ∫∿ | Decision One Mortgage Company, LLC  3023 HSBC Way  Fort Mill, SC 29715 |

| G. PROPERTY LOCATION | H. SETTLEMENT AGENT | I. SETTLEMENT DATE |
|---|---|---|
| 45 Heron Road  Holland, PA 18966  Bucks County, Pennsylvania | Suburban Abstract Affiliates, L.P.  PLACE OF SETTLEMENT  7606 Castor Avenue  Philadelphia, PA. 19152 | September 15, 2006  Disburse:09/20/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 16,602.49 | 403. | |
| 104. Payoff 1st Mortgage to Countrywide Home Loan | 268,821.81 | 404. | |
| 105. Payoff 2nd Mortgage to Greenpoint Mortgage/02 | 50,072.01 | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. School Taxes    07/01/06 to 07/01/07 | 2,537.60 | 408. School Taxes          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 338,033.91 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 382,500.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. School Taxes          to | | 512. School Taxes          to | |
| 213. | | 513. | |
| 214. Seller Assist | | 514. Seller Assist | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 382,500.00 | **520. TOTAL REDUCT. AMT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 338,033.91 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 382,500.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( FROM ) ( X TO ) BORROWER | 44,466.09 | 603. CASH ( TO ) ( FROM ) SELLER | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower _____ 9/15/06    Seller

Kenneth Taggart

HUD-1 (3-86) RESPA, HB4305.2

Page 2

**REDACTED**

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $ @ % | | | |
| *Division of Commission (line 700) as Fol* | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % to | | | |
| 802. Loan Discount % to | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Broker Processing Fee to Community Lending | | 550.00 | |
| 806. Broker Fax Fee to Community Lending | | 35.00 | |
| 807. Underwriting Fee to Decision One Mortgage Company, LLC | | 999.00 | |
| 808. Broker Ovnt Fee to Community Lending | | 20.00 | |
| 809. Yield Spread Premium Community Lending $3825.00 POCL | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 09/20/06 to 10/01/06 @ $ 84.362500/day ( 11 days %) | | 927.99 | |
| 902. Mortgage Insurance Premium months | | | |
| 903. Hazard Insurance Premium 1.0 years | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance 3.000 months @ $ 88.85 per month | | 266.55 | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City/Town Taxes 8.000 months @ $ 13.68 per month | | 109.44 | |
| 1004. County Taxes 8.000 months @ $ 47.54 per month | | 380.32 | |
| 1005. School Taxes 4.000 months @ $ 211.47 per month | | 845.88 | |
| 1006. months @ $ per month | | | |
| 1007. Aggregate Acounting Adjustmen months @ $ per month | | -517.57 | |
| 1008. months @ $ per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Tax Certifications to Suburban Abstract | | 35.00 | |
| 1102. Domestic Relations Search to | | | |
| 1103. Title Examination to | | | |
| 1104. Title Insurance Binder to | | | |
| 1105. Document Preparation to | | | |
| 1106. Notary Fees/clerical to Valerie Schlechter | | 35.00 | |
| 1107. Attorney's Fees to | | | |
| *(includes above item numbers:* ) | | | |
| 1108. Title Insurance to Suburban Abstract Affiliates, L.P. | | 2,046.38 | |
| *(includes above item numbers:* ) | | | |
| 1109. Lender's Coverage $ 382,500.00 2,046.38 | | | |
| 1110. Owner's Coverage $ | | | |
| 1111. PA Endorsments 100, 300, 8.1 to Suburban Abstract Affiliates, L.P. | | 200.00 | |
| 1112. In Coming Wire Fee to Suburban Abstract Affiliates, L.P. | | 15.00 | |
| 1113. Electronic Doc Fee to Suburban Abstract Affiliates, L.P. | | 50.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ 129.50; Releases $ | | 129.50 | |
| 1202. City/County Tax/Stamps:Bucks County ; Mortgage | | | |
| 1203. State Tax/Stamps: Bucks County ; Mortgage | | | |
| 1204. Overnight Fee to Suburban Abstract Associates | | 36.00 | |
| 1205. Closing Protection Letter to Lawyers Title Insurance Corporation | | 35.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Credit Account to Bank of America | | 5,567.00 | |
| 1304. Credit Account to Cap 1 Bank | | 758.00 | |
| 1305. See addit'l disb. exhibit to | | 4,079.00 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 16,602.49 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Valerie Schlechter
Settlement Agent

( STA-57011-V / STA-57011-V / 35 )

# EXHIBIT C

**REDACTED**

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicant should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA | ☒ Conventional | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate | ☐ Other (explain): |
|---|---|---|---|---|---|
| $ 392,500.00 | 7.9600 % | 360 | | ☐ GPM | ☒ ARM (type): 2-YEAR |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 45 HERON ROAD, HOLLAND, PA 18966-2109 | 1 |

| Legal Description of Subject Property (attach description if necessary)  SEE EXHIBIT A | Year Built |
|---|---|

| Purpose of Loan | ☐ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☒ Refinance | ☐ Construction-Permanent | | ☒ Primary Residence ☐ Secondary Residence ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made ☐ to be made |
|---|---|---|---|---|---|
| | $ | $ | No cash-out R/T-$100 max | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| KENNETH J TAGGART, A SINGLE MAN | SOLE OWNERSHIP | ☒ Fee Simple ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |
|---|
| REFI/EQUITY |

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | KENNETH  J.  TAGGART | |

| | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|---|
| | 267987346X | | | | | | | |

| ☐ Married | ☒ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|---|---|
| ☐ Separated | | | ☐ Separated | | |

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs. 0.8 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 45 HERON ROAD  HOLLAND, PA 18966-2109 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs. 15.0 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 7606 BUSTLETON AVE  PHILADELPHIA, PA 19152 | |

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer | ☒ Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| APPRAISAL ONE SOURCE  45 HERON ROAD  SOUTHAMPTON, PA 18966 | | 18.0 | | | |
| | | Yrs. employed in this line of work/profession  18.0 | | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| OWNER | 2153964900 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Initials: 

**REDACTED**

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 11,480.00 | $ | $ 11,480.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,233.00 | 2,790.67 |
| Bonuses | | | · | Other Financing (P&I) | 440.00 | |
| Commissions | | | | Hazard Insurance | | 88.85 |
| Dividends/Interest | | | | Real Estate Taxes | | 61.22 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | · | Homeowner Assn. Dues | | |
| | | | | Other: | | 211.47 |
| Total | $ 11,480.00 | $ | $ 11,480.00 | Total | $ 2,673.00 | $ 3,152.21 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [x] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below Name and address of Bank, S&L, or Credit Union | | * BANK OF AMERICA | 241.00 | 5,567.00 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | * CAPITAL 1 BK | 82.00 | 2,740.00 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | * CAPITAL 1 BK | 68.00 | 1,339.00 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | * CAP 1 BANK | 33.00 | 758.00 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | * COUNTRYWIDE | 2,233.00 | 268,458.27 |
| | | Acct. no. | | |
| Life insurance net cash value Face amount: $ | $ | Name and address of Company | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ | * GREENPOINT | 440.00 | 50,057.02 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 425,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | From Overflow Sheet | 9,024.00 | 953,690.60 |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 12,110.00 | |
| Total Assets a. | $ 425,000.00 | Net Worth (a minus b) $ (857,609.89) | Total Liabilities b. | $ 1,282,509.89 |

## ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 45 HERON ROAD | | $ | $ | $ | $ | $ | $ |
| HOLLAND, PA 18966-2109 | HOUS | 425,000 | 318,515 | | 2,673 | | |
| 521 Cowpath | | | | | | | |
| TELFORD, PA 18969 | R | MULT | | 501,338 | 3,185 | 3,706 | (840) |
| From Overflow Sheet | | | | | | | |
| | | | | 449,815 | 3,890 | 5,318 | (2,092) |
| Totals | | $ 425,000.00 | $ 1,269,668.2 | $ 7,075.00 | $11,697.00 | $ | $ (2,931.50) |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 382,500.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 382,500.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (382,500.00) |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | x | | |
| b. Have you been declared bankrupt within the past 7 years? | | x | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| d. Are you a party to a lawsuit? | | x | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | x |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | x |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| h. Is any part of the down payment borrowed? | | x | | |
| i. Are you a co-maker or endorser on a note? | | x | | |
| j. Are you a U.S. citizen? | x | | | |
| k. Are you a permanent resident alien? | | x | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| m. Have you had an ownership interest in a property in the last three years? | x | | | |
| (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 9/13/06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, the lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☑ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☑ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☐ Female  ☑ Male | Sex: | ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | ROBERT M BROWN | 09/01/2006 | COMMUNITY LENDING |
| ☐ Face-to-face interview | Interviewer's Signature | Date | 725 FITZWATERTOWN RD STE 5 |
| ☐ Mail | | | WILLOW GROVE, PA 19090 |
| ☑ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | 2150871900 | |

REDACTED

| | | CONTINUATION SHEET/RESIDENTIAL LOAN | | | Agency Case Number: |
|---|---|---|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: | | | | |
| | KENNETH J. TAGGART | | | | |
| | Co-Borrower: | | | | Lender Case Number: |

| Borr Creditor | | PAC Account Number | Monthly Pmt Mos | | Balance |
|---|---|---|---|---|---|
| B | GREENPOINT | | $2,997.00 | 0 | $433,644.00 |
| B | COUNTRYWIDE | | $709.00 | 0 | $77,694.00 |
| B | COUNTRYWIDE | | $2,216.00 | 0 | $269,203.00 ✓ |
| B | HSBC | | $1,824.00 | 0 | $18,580.00 |
| B | GREENPOINT | | $369.00 | 0 | $43,259.00 |
| B | CHASE | | $909.00 | 0 | $118,773.00 |
| B | 2006 SCHOOL TAXES | • | | | $2,537.60 |
| | Totals | | $9,024.00 | | $953,690.60 |

--ADDITIONAL REAL ESTATE--

| Address | Present Value | Mortgages & Liens | Gross Rent Inc | Mortgage Payments | Ins,Mnt Tax&Mis | Net Rent Inc |
|---|---|---|---|---|---|---|
| 7606 BUSTLETON AVE PHILADELPHIA, PA 19149 Intent: X Type: HOUSE | | 269,203.00 | 1,295.00 | 2,216.00 ✓ | | (1,050.50) |
| 709 SCHWAB ST HATFIELD, PA 19440 Intent: R Type: | | 61,839.00 | 1,800.00 | 2,193.00 | | (573.00) |
| 7242 Saul Ave PHILADELPHIA, PA 19149 Intent: R Type: | | 118,773.00 | 795.00 | 909.00 | | (468.50) |
| Totals | 0.00 | 449,815.00 | 3,890.00 | 5,318.00 | | 0.0(2,092.00) |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 9/15/06 | X . | |

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21 U (0507).02

Page 4 of 4

Ap#: 2030060910270

# EXHIBIT D

Loan Number _____

# BORROWERS' AUTHORIZATION AND CONSENT

## TO PAYMENT OF FEES TO MORTGAGE BROKERS

Borrower(s): **KENNETH J. TAGGART** _____

1. I/We have retained **COMMUNITY LENDING,** a mortgage broker (the "Mortgage Broker"), to assist me/us in obtaining a mortgage loan in the approximate amount of **$382,500.00**. I/We understand that the Mortgage Broker has, on my/our behalf, submitted my/our application to **Decision One Mortgage Company, LLC** (the "Lender"), either directly or through a loan correspondent (the "Correspondent") and has performed other loan origination services for which the Mortgage Broker and/or Correspondent is entitled to compensation.

2. I/We authorize and direct that, if my/our loan closes, the Mortgage Broker and/or Correspondent will receive certain fees for these services in the amounts estimated on the Good Faith Estimate provided to me/us by the Mortgage Broker. The exact amounts of these fees will be shown on the HUD-1 or HUD-1A Settlement Statement which will be given to me/us when my/our loan closes. I/We authorize, direct and consent to the payment of these fees to the Mortgage Broker as compensation to the Mortgage Broker and/or the Correspondent for services rendered in connection with my/our loan transaction including when applicable, payment of these fees by the Lender paid by lender (PBL) in the form of a Lender paid Broker fee sometimes referred to as a "Yield-Spread Premium".

3. This Paragraph 3 is ☒ is not ☐ applicable to my loan (check appropriate box). As further compensation for services rendered in connection with my/our loan, I/we have separately agreed to pay the Mortgage Broker a fee as shown on my/our Good Faith Estimate, which fee will also be shown on the HUD-1 or HUD-1A Settlement Statement. If my/our loan closes, I/we wish to have this fee paid to the Mortgage Broker from the proceeds of my/our loan. I/We authorize the Lender or the settlement agent to pay this fee to the Mortgage Broker from the proceeds of my/our loan.

_____(SEAL)
**KENNETH J. TAGGART**

# EXHIBIT E

March 26,2008
Kenneth Taggart
45 Heron Rd
Holland, Pa. 18966

Acct #

Re: 45 Heron Rd
    Holland, Pa 18966

American Servicing Company.
Billing Inquiries/Customer Service
P.O. Box 10328
Des Moines, IA 50306-0328

DSM Servicing Mail Support
X2302-04E

CORRESPONDENCE RESOLUTION

MAR 2 8 2008

APR 0 1 2008

#14

X2302-017

Dear Sir or Madam:

I am writing you to dispute the amount of my mortgage balance, my escrow balance, as well as my monthly
payment which would be a reflection of my mortgage balance and escrow balance; I believe these balances
are not correct. I also believe the adjustment on my interest rate is incorrect. Please verify all information and
provide me with escrow payments as well as data to support the interest rate adjustments and all other fees
and charges regarding my mortgage balance, interest rate, escrow balance, and total montly payment with
Principal,Interest,Taxes, & Insurance. Please adjust any finance charges relating to late fees,escrow
adjustments,principal adjustments or monthly paymensts and send me a new statement. Pleas investigate
the matter and correct any billing error as soon as possible.

Your cooperation is greatly appreciated.

Sincerely,

Kenneth J Taggart

DSM Servicing Mail Support
X2302-04E

APR 0 3 2008

#13

# EXHIBIT F

May 29,2008
Kenneth Taggart
45 Heron Rd
Holland, Pa. 18966

Acct #

Re: 45 Heron Rd
. Holland, Pa 18966

*This is in dispute!.*

America's Serviving Comapny
Billing Inquiries/Customer Service
P.O. Box 10388
Des Moines, IA. 50306-0388

Dear Sir or Madam:

This is a follow up letter from March 26,2008. I am writing you to dispute the amount of my mortgage balance, my escrow balance, as well as my monthly payment which would be a reflection of my mortgage balance and escrow balance; I believe these balances are not correct. I also believe the adjustment on my interest rate is incorrect. Please verify all information and provide me with escrow payments as well as data to support the interest rate adjustments and all other fees and charges regarding my mortgage balance, interest rate, escrow balance, and total montly payment with Principal,Interest,Taxes, & Insurance. Please adjust any finance charges relating to late fees,escrow adjustments,principal adjustments or monthly paymensts and send me a new statement. Please investigate the matter and correct any billing error as soon as possible.

There is also a payment that was not credited to my account sent May 16,2008 in the amount of: $3,328.08. enclosed is a copy of the check sent.

Also, as a reminder,Creditors must follow the "Fair Credit Billing Act", as well as the "Fair Credit Billing Act" when resolving a dispute. As per the laws indicated a creditor must not report the disputed payment as late and must submit this to the credit bureau as a disputed account.

I hope this can get resolved as soon as possible. Pleas call me with any questions regarding this matter at: 267-987-3466

Your cooperation is greatly appreciated.

Sincerely,

Kenneth J Taggart

DSM Servicing Mail Support
X2302-04E

JUN 0 2 2008

**#13**

# EXHIBIT G

June 21,2008
Kenneth Taggart
45 Heron Rd
Holland, Pa 18966

America's Servicing Company
P.O. Box #10328
Des Moines, Ia. 50306

Re: Acct #

To whom it may concern,

I am writing you to follow up on a letter dated: May 29,2008;
This letter indicated some items in dispute. Since writing that letter,
there has been a derogatory entry entered on my credit report
indicating a late payment. This is in violation of the :
"Fair Credit Reporting Act", and The "Fair Credit Billing Act".

Pleasse remove the derogatory rating and resolve the issues
indicated in the letter. If this is not resolved in a timely manor, I will
have no other choice but to take legal action to resolve this matter.

You may contact me with any question regarding this matter at:
267-987-3466. Your cooperation is greatly appreciated.

Yours Truely,

Kenneth Taggart

DSM Servicing Mail Support
X2302-n4E

JUN 2 6 2008

#13

# EXHIBIT H

June 26, 2008
Kenneth Taggart
45 Heron Rd
Holland, Pa 18966

America's Servicing Company
General Correspondence/Credit dipute
P.O. Box #10328
Des Moines, Ia. 50306
Re: Acct #

To whom it may concern,
    I am writing you to follow up on a letter dated: May 29,2008 &
June 21,2008. I just spoke to Jeff in your Maryland Office in referance
to Mays payment being reported late on my credit bureaus. He
indicated to me that all payments were considered on time and that
ASC has never reported me late according to his system!
    I went over the issue with Jeff as described in my earlier letters.
I sent an additional check dated May 30,2008 via Express mail and
records indicate that this replacement check was received by ASC
on May 31,2008 but not posted until June 3,2008.

THE FIRST CHECK WAS LOST AND THE OTHER CHECK DID NOT
GET CREDITED ON TIME ALTHOUGH RECEIVED BY THE END OF
THE MONTH.
        Enclosed are copies of the date received via the Express Mail
Confirmation slip & number and the check cashed. Also a copy of
credit reports ran today indicating late payments
    Please remove the derogatory rating and resolve the issues
indicated in the letter as soon as possible as I am in the process of
refinancing a mortgage and this has already held up settlement.
    You may contact me with any question regarding this matter at:
267-987-3466.   Your cooperation is greatly appreciated.

Yours Truely,
Kenneth Taggart

PS *COULD YOU FAX ME A LETTER TO EXPIDTE THIS INDICATING
THAT "ALL PAYMENTS WERE MADE ON TIME AND NOT LATE"
            FAX 215-396-4944

# EXHIBIT I

**REDACTED**



PO Box 10328
Des Moines, IA 50306-0328

April 25, 2008

Kenneth J Taggart
45 Heron Rd
Holland, PA 18966

Dear Kenneth J Taggart:

RE:   Loan Number

America's Servicing Company (ASC) has received your correspondence dated March 26, 2008, regarding your mortgage loan. I have reviewed the information presented and would like to provide you with the details of my research.

An escrow review was processed on April 21, 2008. An Escrow Account Statement was sent to you with our calculations. As a result of this review, effective May 2008, your payment changed from $3,309.49 to $3,188.55.

Please note that the previous annual escrow review was based on an annual city tax amount of $1,078.61 and $ 2,952.76 for school taxes. The annual amount for insurance is $1,066.24. The most recent review was based on an annual city tax amount of $1,123.20 and $2,585.28 for the school tax amount. Your annual insurance amount remained $1,066.24.

The annual amounts used in the latest review resulted in a $29.63 decrease in the monthly amount collected for taxes. There were no changes in the amount collected for your hazard insurance. There is a surplus in the amount of $448.45 in your escrow account, a check was sent to you on April 22, 2008.

We have attached a copy of your mortgage note document that was signed at closing, which will provide you the interest rate and initial mortgage balance of your loan. We are including a copy of payment history from Decision One Mortgage Company and a copy of our customer activity statement that will show a running balance of your principal curtailment.

If you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and 6 p.m., in your time zone.

Sincerely,

Beverly Sharer
106 Written Correspondence

PC003/ct6

# EXHIBIT J

**REDACTED**



PO Box 10328
Des Moines, IA 50306-0328

June 16, 2008

Kenneth J Taggart
45 Heron Rd
Holland, PA 18966

Dear Kenneth J Taggart:

RE:    Loan Number

America's Servicing Company (ASC) has received your correspondence dated May 29, 2008, regarding your mortgage and escrow balances, payment amount, interest rate adjustment and your May 2008 payment. I have reviewed the information presented and would like to provide you with the details of my research.

Enclosed is a Customer Account Activity Statement (CAAS) reflecting a complete payment history for the period December 06, 2006, through June 10, 2008. The CAAS reflects when payments were received, how they were applied to your loan, and any distributions made from your loan. Also included are running balances of the unpaid principal, escrow, suspense, and outstanding fee accounts. The dates fees and charges were assessed, any amounts paid toward these fees, and waivers/reversal of these fees is also reflected.

Per the terms of your loan, your payment is due on the first of each month. A late fee may be assessed if payment is not received by the end of business on the 16th of the month, or the next business day, if the 16th falls on a weekend or holiday. Payments are processed and applied to your account the date ASC receives the payment, not the date the payment was mailed. It is the mortgagor's responsibility to ensure the payment is received in a timely manner.

At the time of closing for your mortgage loan, a Note was executed that defined the terms of your loan. Your Note stipulates that your loan is an adjustable rate mortgage and the first interest rate change date is set to occur on October 1, 2008. As of the date of this letter, your interest rate remains at 7.94%. ASC is unable to adjust the terms of your Note. Enclosed is a copy of your note for your review.

The new monthly mortgage payment, effective with the May 2008 payment is $3,188.55. Following is a breakdown of this payment:

| | |
|---|---|
| Principal and Interest | $ 2,790.67 |
| City Taxes | $ 93.60 |
| School Taxes | $ 215.43 |
| Homeowners Insurance | $ 88.85 |
| TOTAL | $ 3,188.55 |

DC003/hth



PO Box 10328
Des Moines, IA 50306-0328

Taggart
June 16, 2008
Page 2

On June 03, 2008 we received check number 1458 in the amount of $3,328.08. Of these funds $3,188.55 was applied to the May 2008 payment. The remaining $139.53 applied to a late fee on June 4, 2008.

Your correspondence references a payment sent on May 16, 2008, in the amount of $3,328.08. However, we have no record of these funds being applied to your loan. We need your help to finalize our research for your funds. Please contact your bank to obtain copies of the front and back of this cashed item. The front of the check verifies the payee, amount, bank account number and date. The back of the check provides the numbers needed to research the posting and cashing transactions. Viewing the cashed check enables us to finalize our research. To receive proper credit for your payment, please fax a copy of the front and back of the cashed check to our attention at (866) 453-6315 or mail the information to:

    America's Servicing Company
    P.O. Box 10328
    Des Moines, IA 50306-0328

To ensure that your request is completed promptly and accurately please include your loan number on any information sent.

Your loan is currently due for the June 2008 payment. As of the date of this letter your principal balance is $377,258.64 and your escrow balance is $2,187.32.

If you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and 6 p.m., in your time zone.

Sincerely,

Melissa Scheetz
Written Correspondence

Enclosure(s)

DC003/hth

# EXHIBIT K

**REDACTED**



PO Box 10328
Des Moines, IA 50306-0328

June 18, 2008

Kenneth J Taggart
45 Heron Rd
Holland, PA 18966

Dear Kenneth J Taggart:

RE:    Loan Number

America's Servicing Company (ASC) has received your correspondence dated May 29, 2008,
regarding your request for a validation of debt. I have reviewed the information presented and
would like to provide you with the details of my research.

We acknowledge your request for validation of the debt. A payment history and a copy of the
Mortgage Note have been sent under separate cover on June 16, 2008. These documents will
serve as a validation of the above mentioned loan. All credit reporting submitted by ASC for the
above mortgage loan is valid.

You have requested a statement confirming that our billing standards conform to the terms of the
Fair Credit Billing Act. Please note that the Fair Credit Billing Act applies to accounts such as
credit cards and other revolving charge accounts. This Act does not apply to mortgage loans.

If you have additional questions, please call our Customer Relations Department at 800-842-7654.
A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and
6 p.m., in your time zone.

Sincerely,

Danielle Getz
Written Correspondence

Following receipt of the payment dispute and in accordance with the Fair Credit Reporting Act (FCRA), America's Servicing Company is required to
update the borrower's tradeline of the credit reports to indicate "Account Information Disputed by Consumer." If our research has confirmed the
reporting activity of the loan is accurate, this America's Servicing Company tradeline comment will remain on the credit report until the borrower
authorizes America's Servicing Company to remove this comment.

DC003/f14

# EXHIBIT L

**REDACTED**



PO Box 10328
Des Moines, IA 50306-0328

July 9, 2008

Kenneth J Taggart
45 Heron Rd
Holland, PA 18966

Dear Kenneth J Taggart:

RE:    Loan Number

America's Servicing Company (ASC) has received your correspondence dated June 21, 2008, regarding your request for a validation of debt. I have reviewed the information presented and would like to provide you with the details of my research.

We acknowledge your request for validation of the debt. A payment history and a copy of the Mortgage Note have been enclosed for your review. These documents will serve as a validation of the above mentioned loan. As of July 9, 2008 no delinquencies have been reported by ASC for the above loan.

You have requested a statement confirming that our billing standards conform to the terms of the Fair Credit Billing Act. Please note that the Fair Credit Billing Act applies to accounts such as credit cards and other revolving charge accounts. This Act does not apply to mortgage loans.

In addition, please find the enclosed correspondence sent to you on June 16, 2008 in response to your request dated May 29, 2008.

If you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and 6 p.m., in your time zone.

Sincerely,

Danielle Getz
Written Correspondence

Enclosure(s)

Following receipt of the payment dispute and in accordance with the Fair Credit Reporting Act (FCRA), America's Servicing Company is required to update the borrower's tradeline of the credit reports to indicate "Account Information Disputed by Consumer." If our research has confirmed the reporting activity of the loan is accurate, this America's Servicing Company tradeline comment will remain on the credit report until the credit report until the borrower authorizes America's Servicing Company to remove this comment.

DC003/f14

# EXHIBIT M

REDACTED



**PO Box 10328**
**Des Moines, IA 50306-0328**

June 26, 2008

Kenneth J Taggart
45 Heron Rd
Holland, PA 18966

Dear Kenneth J Taggart:

RE:   Loan Number

This letter is in response to your phone call to America's Servicing Company (ASC) regarding credit reporting submitted for the above mortgage loan. I have reviewed your loan information and would like to provide you with the details of my research.

This letter is in response to a request for a credit adjustment. As of June 26, 2008 no delinquencies have been reported by ASC for the above mortgage loan. As a precaution we have resubmitted all credit reporting to ensure the payment history is accurately reflected.

We have submitted the completed Universal Data Form to each of the four major credit bureaus listed below so they may update their records. Please be aware; however, it may take 30 days for the update to reflect on your individual credit report.

|  |  |
|---|---|
| CBI (Credit Bureau, Inc.) | Trans Union Credit |
| Equifax Information Technology | Information Company |
| (800) 685-1111 | (800) 888-4213 |
| | |
| Innovis UDF Processing Center | Experian |
| (800) 457-0207 | (888) 397-3742 |

If you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8 a.m. and 6 p.m., in your time zone.

Sincerely,

Danielle Getz
Written Correspondence

DC003/04

# EXHIBIT N

**REDACTED**

BORROWERS KENNETH J. TAGGA███          DATE: SEPTEMBER 15, 2006
ADDRESS 45 HERON ROAD
CITY/STATE/ZIP HOLLAND, PENNSYLVANIA 18966-2109          LOAN NO.:

LENDER: Decision One Mortgage Company, LLC
3023 HSBC Way
Fort Mill, SC 29715

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 11.4442 % | $ 1,039,053.24 | $ 379,867.01 | $ 1,418,920.25 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|---|---|---|
| 24 | 2,790.67 | MONTHLY COMMENCING 11-01-06 AND ON THE SAME DAY OF EACH MONTH THEREAFTER | 1 | 4,011.67 | 10-01-36 |
| 6 | 3,596.17 | 11-01-08 | | | |
| 6 | 3,876.20 | 05-01-09 | | | |
| 323 | 4,034.36 | 11-01-09 | | | |

**DEMAND FEATURE:** ☑ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature:
☐ All disclosures are based on an assumed maturity date of one year.

**VARIABLE RATE FEATURE:** ☑ This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** ☑ You are giving a security interest in the property located at: 45 HERON ROAD, HOLLAND, PENNSYLVANIA 18966-2109
☐ You are giving a security interest in the goods or property being purchased.
☐ Other:

**ASSUMPTION:** A subsequent purchaser of this property: ☑ cannot assume the remainder of the mortgage on the original terms.
☐ may under certain circumstances, be allowed to assume the remainder of the mortgage on the original terms.

**FILING / RECORDING FEES:** 129.50

**INSURANCE:** Credit life, accident, health or loss of income insurance is not required in connection with this loan. This loan transaction requires the following insurance: ☑ Hazard Insurance    ☐ Flood Insurance    ☐ Private Mortgage Insurance
You may obtain property insurance from anyone you want that is acceptable to Lender.

**LATE CHARGES:** If your payment is more than 15 days late, a late charge of 5.0% of the overdue payment amount will be due from you.

**PREPAYMENT:** If you payoff your loan early you: ☑ may ☐ will not be charged a penalty to prepay this loan in full or in part.
☐ may ☑ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, right to accelerate before scheduled maturity date, pre-payment refunds and penalties, and further information regarding security interests and the policy regarding assumption of the obligation.
(e) appearing by a date or figure means it is an estimate.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure along with copies of documents referred to in this disclosure.

KENNETH J. TAGGART          BORROWER / DATE          BORROWER / DATE

BORROWER / DATE          BORROWER / DATE



# EXHIBIT O

**REDACTED**



DATE: **SEPTEMBER 15, 2006**
LOAN NUMBER:
MORTGAGOR: **KENNETH J. TAGGART**
PROPERTY ADDRESS: **45 HERON ROAD, HOLLAND, PENNSYLVANIA 18966-2109**

The following notice tells you of your right to cancel your lien under federal law. Please read this notice carefully, it describes important rights. In this notice, "you" means you, the borrower and "we" means your lender.

## NOTICE OF RIGHT TO CANCEL

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a lien on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

    (1) The date of the transaction, which is    **SEPTEMBER 15, 2006**  ; or
    (2) The date you received your Truth-in-Lending disclosures; or
    (3) The date you received this notice of your right to cancel.

If you cancel the transaction, the lien is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the lien on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

    **Decision One Mortgage Company, LLC**
    **200 GIBRALTAR ROAD, SUITE 350**
    **HORSHAM, PENNSYLVANIA 19044**
    **Attention: Cancellation Dept.**
    **FAX Number: (215) 672-6181**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of **SEPTEMBER 19, 2006** (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

_____
Borrower's Signature                Date

I acknowledge receipt of two copies of this Notice of Right to Cancel on this **15TH** day of **SEPTEMBER, 2006**

_____
Signature **KENNETH J. TAGGART**

✄